IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-00080-WYD

FRANCOIS DOMINIQUE MICHEL SALINIER,

      Petitioner,

v.

AMANDA JOY MOORE, a/k/a AMANDA JOY MINARIK, a/k/a AMANDA JOY
SALINIER,

      Respondent.

And Concerning the Minor Child, S.G.S.

---

## ORDER

---

I.   <u>INTRODUCTION</u>

      THIS MATTER is before the Court on Petitioner's Motion for Fees and Expenses
Incurred Regarding the Petition for Return of the Minor Child (ECF No. 55), filed March
31, 2010.  Petitioner moves for his fees and costs pursuant to 42 U.S.C. § 11607(b)(3).

      By way of background, on March 1, 2010, I ordered Respondent to return the
minor child to Petitioner's custody in France in accordance with the Convention on
International Child Abduction as enforced under the International Child Abduction
Remedies Act, 42 U.S.C. § 11601 *et seq.*  Consequently, Petitioner is entitled to an
order requiring the Respondent "to pay necessary expenses incurred by or on behalf of
the petitioner, including court costs, legal fees, foster home or other care during the
course of the proceedings in the action, and transportation costs related to the return of

the child, unless the respondent establishes that such order would be clearly inappropriate."  42 U.S.C. § 11607(b)(3).

Petitioner seeks $24,397.67 in attorney fees, $3,350.84 in costs for litigating all aspects of this case, and $4,482.87 in travel and lodging expenses.  In response, while Respondent does not contest "the reasonableness of the fees incurred . . . [Respondent] suggest[s] that the paralegal time was excessive and that Respondent should not have to be liable for the costs for the travel expenses of Petitioner's Wife and other relatives."  (Resp. at 5.)  Respondent also contends that a fee award would be "clearly inappropriate" because it would limit her ability to support herself and her four other children.  (Resp. at 4.)

II.    ANALYSIS

A.    Attorney Fees and Costs

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *Id.*  In other words, to determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee.  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotations omitted).  "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'"  *Id.* (quotation omitted).  "A

district court should approach this reasonableness inquiry 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients.'" *Id.* (quoting *Ramos v. Lamm*, 713 F.2d 545, 555 (10th Cir. 1983)).  "However, '[t]he record ought to assure [the appellate court] that the district court did not eyeball the fee request and cut it down by an arbitrary percentage.'" *Id.* (quotation and internal quotation marks omitted).

Here, Petitioner is seeking fees in the amount of $24,397.67 — 76.9 hours at $200 per hour for Attorney Courtney Leathers and 55.5 hours at $100 per hour for Paralegal Cathy Butler.  Respondent suggests, without providing any supporting authority or documentation, that the number of paralegal hours spent on this case was excessive.  Respondent does not object to the $3,350.84 request for costs.

Turning to the issue of attorney and paralegal hours, I note that in determining the reasonableness of the hours expended, I must consider several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to specific task.  *See Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983), rev'd in part on other grounds, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

The party seeking an award of fees should submit evidence supporting the hours

worked and rates claimed." *Hensley*, 461 U.S. at 433. The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250. "A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id.*; *see also Robinson*, 160 F.3d at 1281 ("a district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks'") (quotation omitted).

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (quoting *Ramos,* 713 F.2d at 553). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id.* (citing *Ramos*, 713 F.2d at 553-54) (giving as an example time spent doing background research)); *Hensley*, 461 U.S. at 434, 437 (counsel are expected to exercise their "billing judgment", "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). In other words, the district court should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at

434 (quotation omitted).

"After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable." *Id.* "The *Ramos* court suggested that among the factors to be considered were (1) whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers. *Roberts*, 160 F.3d at 1281 (quoting *Ramos*, 761 F.2d at 554). "In this analysis, [the court should] ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id.*

In this case, I note that Petitioner's counsel submitted detailed billing records that "reveal, for each lawyer [and paralegal] for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1250 (10th Cir. 1998).

Considering the *Ramos* factors, I find that a large majority of the tasks Petitioner's counsel billed would normally be billed to a paying client. Further, I find that although this case was resolved quickly, it involved highly contested, complex and sensitive issues. I am also unpersuaded by Respondent's argument that excessive paralegal hours were billed. In response, Petitioner's counsel stated that "it is this firm's policy to utilize paralegals to keep costs down for our clients, as it would be twice as expensive to have attorneys handling all tasks." (Reply at 3.) After reviewing the

proffered affidavits and exhibits, I do not find any excessive billing or duplicative tasks. Accordingly, I find Petitioner's counsel's billing statements reasonable and necessary.

As to the hourly rate, the Tenth Circuit indicates that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'" *Burch v. La Petite Academy, Inc.*, 2001 WL 589461 at *2 (quoting *Case v. Unified School Dist.*, 157 F.3d 1243 (10th Cir. 1998)). The "local market rate" is usually the state or city in which counsel practices. *Ellis v. Univ. of Kansas Medical Center*, 163 F.3d 1186, 1203 (10th Cir. 1998) (looking at "the prevailing market rates in the relevant community"-Kansas City, Kansas); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers in the area in which the litigation occurs). The court is also entitled to consider the quality of counsel's performance in setting the fee. *Ellis*, 163 F.3d at 1203.

Here, Respondent does not contest Ms. Leathers' hourly fee of $200 or Ms. Butler's hourly fee of $100, and thus, I find these fee rates to be reasonable. I also find the request for $3,350.84 in costs to be reasonable.

B.    Travel and Lodging Expenses

Next, I address Petitioner's request for $4,482.87 in travel and lodging expenses associated with this proceeding. Respondent objects to costs associated with the travel of Petitioner's family. In light of Respondent's financial status and her obligations to her children, I agree that it would be "clearly inappropriate" for Respondent to pay for Petitioner's parents' airplane tickets. 42 U.S.C. § 11607(b)(3). However, I find that Respondent is financially responsible for costs associated with the travel of Petitioner's wife, who testified at the hearing. Accordingly, Petitioner's request for travel and

lodging expenses is reduced by the total cost of Petitioner's parents' airplane tickets.

C.      Financial Condition of Respondent

Respondent asserts that she is a stay-at-home mother.  She is currently

pregnant and the primary caretaker of three minor children ages 12 years, 2 years and

8 months.  Respondent further states that she is unemployed, has only nominal assets

and any award of fees and costs would "substantially impair . . . [her] ability to support

herself, her unborn child and her four living children."  (Resp. at 3.)

Pursuant to 42 U.S.C. § 11607(b)(3), I have discretion to reduce any potential

award to allow for the financial condition of the Respondent.  *See Rydder v. Rydder*, 49

F.3d 369, 373-74 (8th Cir. 1995).  Accordingly, I believe a fee award which unduly

limited Respondent's ability to support her children would be "clearly inappropriate."  As

a result, I find that the attorney fee award should be reduced by 25% or $6,099.42.  *See*

*Berendsen v. Nichols*, 938 F. Supp. 737, 739 (D. Kan. 1996) (reducing fee award by

15% to account for respondent's financial condition).

III.    CONCLUSION

Based on the foregoing, Petitioner's Motion for Fees and Expenses Incurred

Regarding the Petition for Return of the Minor Child (ECF No. 55) is **GRANTED** as

follows:

Petitioner is awarded attorney fees in the amount of $18,298.25, which is the

original fee award, $24,397.67, reduced by 25% or $6,099.42.  Petitioner is also

awarded costs for litigating all aspects of this case in the amount of $3,350.84.

Petitioner is further awarded $4,482.87 in travel and lodging expenses reduced by the

total cost of Petitioner's parents' airplane tickets.

Dated: September 1, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge